UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

LANNIS GROUP LTD., a Cayman Islands
Corporation,

    Plaintiff,

v.

COX POWERTRAIN LTD., a UK Corporation,
RING POWER CORPORATION, a Florida Corporation,
and ALL POINTS BOATS, INC., a Florida Corporation,

    Defendants.
_____/

## COMPLAINT

Plaintiff Lannis Group Ltd., a Cayman Islands Corporation ("Lannis") sues Defendants Cox Powertrain Ltd., a United Kingdom Corporation ("Cox"), Ring Power Corporation, a Florida Corporation ("Ring Power"), and All Points Boats, Inc., a Florida Corporation ("APB") (collectively, "Defendants") and alleges:

### INTRODUCTION

1. This action is the result of defective diesel outboard engines manufactured by Cox and installed (and repeatedly "repaired") by APB, Ring Power, and other authorized Cox dealers.

2. Lannis owns a 38' Jupiter center console, Hull Identification Number MEV38254D819, (the "Vessel").

3. In May 2023, Lannis purchased two Cox CXO300 HP Diesel V8 outboard engines, with serial numbers CX003660P20220914124 (port) and CX003660P2022090912N (starboard) (collectively, the "Engines").

4. Shortly after installation, the Engines experienced repeated, significant issues, causing severe safety hazards, including an incident where the Vessel nearly caught fire.

5. After repeated unsuccessful repair attempts by Defendants, the Engines are now inoperable and Defendants have refused to remedy the defects.

6. All conditions precedent have occurred, been waived, or would be futile.

## FACTUAL ALLEGATIONS

7. Lannis is a Cayman Islands corporation with its principal place of business in the Cayman Islands.

8. Cox is a United Kingdom corporation with its principal place of business in the United Kingdom, doing business in Florida.

9. Ring Power is a Florida corporation with its principal place of business in St. Augustine, Florida.

10. APB is a Florida corporation with its principal place of business in Ft. Lauderdale, Florida.

11. This Court has personal jurisdiction over Cox because:

   a. Cox regularly conducts business in Broward County, Florida, and has authorized multiple dealers and distributors of its products in Broward County, Florida (§§ 48.193(1)(a)(1), (3), Fla. Stat.);

   b. Cox caused injury to Lannis in Broward County, Florida (§ 48.193(1)(a)(6));

   c. Cox breached a contract requiring performance in Broward County, Florida (§ 48.193(1)(a)(7)); and

   d. Cox has sufficient "minimum contacts" with Florida because (1) the causes of action alleged herein arose from Cox's contacts with Florida; (2) Cox purposefully availed itself of the privilege of conducting activities within Florida; and (3) Cox's contact with Florida was (and is) such that it should reasonably anticipate being haled into court in this state.

12. This Court has federal question subject-matter jurisdiction under 28 U.S.C. § 1331 because the action arises under the laws of the United States, namely, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and the amount in controversy exceeds $50,000, exclusive of interest and costs.

13. This Court has diversity subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of a state and citizens of a foreign state.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**General Allegations**

15. Cox is a manufacturer of marine engines, including a line of diesel outboard engines for marine vessels.

16. Cox's diesel outboard engines are new to the market, and are advertised as a "new alternative" to standard outboard engines with "next generation technology that responds to global demands for fuel efficiency, safety and sustainability, with a low total cost of ownership." Cox further advertises that "Cox Marine outboards have extended service intervals, meaning fewer trips for upkeep and more time on the water." *See* **Exhibit A**.

17. Cox holds out certain companies as its authorized distributors and dealers. Cox's website (coxmarine.com) allows users to search for a "Cox Representative" and connects them to a distributor or dealer in their area. *See* **Exhibit B**.

18. Ring Power is an agent, distributor, and "contributing shareholder" of Cox, and Cox lists Ring Power on its website as a Cox Representative and distributor.

19. Ring Power holds itself out as "the largest Cox Marine diesel outboard distributor in the United States" and "the largest distributor for Cox Marine world-wide."[1]

20. The url "coxmarineoutboard.com" directs users to a Ring Power website.

21. APB sells and provides manufacturing, refit, and repair services to marine products.

22. Cox lists APB on its website as a Cox Representative and dealer.

**The Engines**

23. In May 2023, Plaintiff purchased the Engines from APB who installed them under the supervision of Ring Power.

24. Shortly after installation, the Engines repeatedly malfunctioned. Issues included, but were not limited to:

   a. voltage alarms;

   b. Cox engine display providing incorrect readings, including fuel tank levels and power levels;

   c. sending unit wires to Cox display;

   d. faulty starboard fuel sensor;

   e. fuel gauges;

   f. faulty seals;

   g. battery chargers and other voltage issues;

   h. PTT sensors and bypass screws;

   i. electrical cable fire incident;

   j. engines overheating at less than maximum capacity; and

   k. complete failure.

---

[1] Ring Power's brochure is attached hereto as **Exhibit C**, and can be found at https://www.coxmarineoutboard.com/ (last visited July 10, 2025).

25. Lannis timely reported the issues to Ring Power, Cox, and APB.

26. On numerous occasions, Defendants attempted (and failed) to repair and troubleshoot the Engines, and to coordinate service with other Cox dealers.

27. Although Ring Power was the designated distributor for Engine repairs on at least three occasions, Ring Power failed to provide technicians for necessary repairs and directed Lannis to other authorized Cox dealers. These other authorized Cox dealers failed to repair the Engines.

28. Cox (both directly and through Ring Power) repeatedly directed Lannis to transport the Vessel unreasonably long distances, at Lannis's own expense, for Engine repairs.

29. Cox (both directly and through Ring Power) also directed Lannis to purchase multiple spare parts, at Lannis's own expense, for the inevitable issues that would arise with the defective Engines while the Vessel was at sea.

30. Recently, Ring Power directed Lannis to transport the Vessel, once again at Lannis's own expense, from St. Maarten to Puerto Rico for additional repair attempts.

31. When Lannis reluctantly agreed to ship the Vessel to Puerto Rico, however, Ring Power reneged and failed to provide a technician to repair the Engines.

32. Instead, Ring Power again directed Lannis to a different Cox dealer to attempt to repair what Ring Power has repeatedly failed to repair in the past.

33. The Vessel is currently inoperable due to complete Engine failure.

**The Warranty**

34. The Engines came with an accompanying Cox manufacturer's warranty (the "Warranty"). The Warranty is attached as **Exhibit D**.

35.     The Warranty is effectuated "at the time of purchase by the [Cox] Distributor or Dealer that [the user] purchased the [Cox] Product from, or by the [Cox] Distributor or Dealer who commissioned or recommissioned the [Cox] Product." Ex. D at 5.

36.     Ring Power commissioned the Engines, and designated the Warranty as "recreational use" upon registration.

37.     On July 18, 2023, Ring Power, through its Vice President of the Cox Marine Division, Pat Bucci, reaffirmed the recreational use designation by email to Lannis, stating: "As far as warranty, your engines were registered upon commissioning, and you would fall under our standard recreational warranty terms which is 5 years or 1500 hours whichever comes first." An employee and/or officer of Cox, Andrew Aspelin, was copied on the email. *See* **Exhibit E** (July 18, 2023 Email).

38.     Consistent with Ring Power's July 18 representations, the Warranty explicitly states that recreational application warranty begins on the date of commission and ends either five (5) years thereafter, or after 1500 hours of use, whichever is earlier. Ex. D at 7.

39.     The Engines were commissioned in May 2023, and the Warranty is therefore in effect until May 2028 or after 1500 hours of use, neither of which have occurred.

40.     The Warranty "covers brand new [Cox] Products purchased from a [Cox] Distributor or Dealer against defects in materials and workmanship" and assures that the Cox "Product is manufactured under strict quality control. However, should there be any defect in material or workmanship, [Cox] guarantee[s] that it will be corrected without charge." Ex. D at 6.

41.     The Warranty also assures that "[a]ll [Cox] Distributors and Dealers have been trained and approved in accordance with [Cox]'s standards." Ex. D at 4.

42. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2304, provides the "Federal minimum standards for warranties," which include that the warrantor (here, Cox) "must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty," and "if the product (or a component thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be) . . . If the warrantor replaces a component part of a consumer product, such replacement shall include installing the part in the product without charge."

## COUNT I
## BREACH OF CONTRACT

43. Lannis reasserts the allegations of paragraphs 1 through 42.

44. The Warranty is an express contract between Lannis and Cox.

45. As authorized dealers/distributors, Ring Power and APB are also parties to the Warranty, and are bound by the obligations therein.

46. Further, Ring Power and APB registered the Warranty upon installation and commissioning of the Engines.

47. At all relevant times, Cox had a duty under the Warranty to "replace any part of the [Engine(s)] which has failed through either material defect or incorrect factory assembly, free of charge."

48. At all relevant times, Ring Power and APB had a duty under the Warranty to "repair [the Engines] in a timely manner."

49. Lannis complied with its obligations under the Warranty and timely notified Ring Power, Cox, and/or APB of the Engines' issues, demanding repair or replacement.

50. Defendants breached their obligations under the Warranty by failing to repair or replace the Engines despite Lannis's demands and a reasonable period of time for compliance.

51. As a direct and proximate result of Defendants' breaches of the Warranty, Lannis has suffered and continues to suffer damages.

WHEREFORE, Lannis demands judgment against Defendants for actual damages, attorneys' fees under 15 U.S.C. § 2310, costs, pre- and post-judgment interest, and all other relief deemed just and proper.

## COUNT II
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

52. Lannis reasserts the allegations of paragraphs 1 through 42.

53. Defendants owe duties of good faith and fair dealing under the Warranty.

54. Defendants breached their duty of good faith and fair dealing by failing to repair or replace the Engines and failing to make reasonable efforts to coordinate with Lannis to obtain the repair work guaranteed by the Warranty.

55. Defendants' breaches caused injury to Lannis, including excessive costs associated with repair work which should have been free of cost.

WHEREFORE, Lannis demands judgment against Defendants for actual damages, attorneys' fees under 15 U.S.C. § 2310, costs, pre- and post-judgment interest, and all other relief deemed just and proper.

## COUNT III
## BREACH OF EXPRESS WARRANTY
## UNDER MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. 2301, *et seq.*

56. Lannis reasserts the allegations of paragraphs 1 through 42.

57. This is an action brought under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

58. Lannis is a "consumer" under the MMWA.

59. The Engines are a "consumer product" under the MMWA.

60. The Warranty is a "written warranty" under the MMWA.

61. At all relevant times, Cox, Ring Power, and APB were "suppliers" and "warrantors" under the MMWA.

62. The Engines' failures were the direct result of one or more defects in manufacturing, workmanship, or materials.

63. The Engines' defects could not reasonably have been discovered by Lannis prior to its purchase of the Engines.

64. Lannis has provided Cox, Ring Power, and APB with notice and reasonable opportunity to cure the Engines' defects, but Defendants continue to refuse to repair or replace the Engines to Lannis's detriment.

65. The Warranty was part of the basis of the bargain upon which Lannis seeks relief for the purchase of the Engines.

66. The Engines have not been properly repaired or replaced under the Warranty and continue to be in a defective condition through no fault of Lannis.

67. Defendants' failure and ultimate refusal to adequately repair or replace the defects is a breach of the Warranty.

68. The Warranty has failed its essential purpose.

69. Lannis was damaged as a result of Defendants' failure to comply with the Warranty.

WHEREFORE, Lannis demands judgment against Defendants for actual damages, attorneys' fees under 15 U.S.C. § 2310, costs, pre- and post-judgment interest, and all other relief deemed just and proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

70. Lannis reasserts the allegations of paragraphs 1 through 42.

71. Cox, Ring Power, and APB are each "merchants" of outboard diesel engines manufactured by Cox.

72. The Engines were purchased by Lannis from APB in Florida.

73. Under Florida Statutes, 672.314, the Engines were sold with an implied warranty of merchantability.

74. The Engines were not fit for the ordinary purposes for which they are used and were not of fair average quality within the description of the product.

75. Almost immediately, the Engines experienced serious issues when used for their ordinary purpose, and ultimately failed entirely.

76. Defendants did not disclaim or limit the implied warranty of merchantability.

77. Defendants' breaches caused Lannis to suffer damages.

WHEREFORE, Lannis demands judgment against Defendants for actual damages, attorneys' fees under 15 U.S.C. § 2310, costs, pre- and post-judgment interest, and all other relief deemed just and proper.

## COUNT V
## NEGLIGENCE

78. Lannis reasserts the allegations of paragraphs 1 through 33.

79. Defendants attempted to repair the Engines, and owed a duty to Lannis to exercise reasonable care in the repair attempts.

80. Defendants breached their duties of care when they negligently attempted to repair the Engines and deemed them fit for use following unsuccessful repairs.

81. On numerous occasions, Defendants utilized technicians with insufficient training and knowledge to perform repairs, and created safety hazards in doing so.

82. Defendants' breaches caused Lannis to suffer damages, including but not limited to nearly catching fire after faulty repair attempts.

WHEREFORE, Lannis demands judgment against Defendants for actual damages, punitive damages, costs, pre- and post-judgment interest, and all other relief deemed just and proper.

## COUNT VI
## (ALTERNATIVE)
## PROMISSORY ESTOPPEL

83. Lannis reasserts the allegations of paragraphs 1 through 33.

84. Ring Power told Lannis via email on July 18, 2023, that the Engine Warranty was "registered upon commissioning, and you would fall under our standard recreational warranty terms which is 5 years or 1500 hours whichever comes first."

85. An employee and/or officer of Cox, Andrew Aspelin, was copied on the email and voiced no objection to Ring Power's representations.

86. Based on these representations—which were consistent with earlier representations to Lannis from Ring Power, Cox, and APB—Lannis sought repairs only from Cox's authorized dealers and/or distributors in order to remain in compliance with the Warranty.

87. Cox's authorized dealers/distributors, including but not limited to Ring Power and APB, failed to repair or replace the Engines.

88. Lannis relied on Defendants' representations to its detriment.

89. But for Defendants' representations, Lannis would not have limited its repair work to authorized dealers/distributors of Cox and incurred substantial expense for failed repair work.

90. Cox's authorized dealers/distributors are limited to specific areas, and Lannis was required to travel long distances, at its own expense, to reach the authorized dealers/distributors for these failed repair attempts.

91. Defendants reasonably should have expected their promises would induce reliance in the form of action or forbearance by Lannis.

92. The promises did in fact induce such action or forbearance.

93. Defendants' representations caused Lannis to suffer damages.

94. Injustice can only be avoided by enforcement of the promises and payment of expenses incurred in attempting to conform with the terms of the Warranty.

WHEREFORE, Lannis demands judgment against Defendants for actual damages, costs, pre- and post-judgment interest, and all other relief deemed just and proper.

## JURY TRIAL DEMAND

Lannis demands a trial by jury on all issues so triable.

JONES FOSTER P.A.
*Counsel for Plaintiff Lannis Group, Ltd.*
505 S. Flagler Drive, Suite 1100
West Palm Beach, FL 33401
(561) 650-0404

By: */s/ Danielle L. Jakeman*
   Danielle L. Jakeman
   Florida Bar No. 1026388
   djakeman@jonesfoster.com
   Travis J. Foels
   Florida Bar No. 1011914
   tfoels@jonesfoster.com

#6138918 v1 33456-00002